902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Margaret MITCHELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH and HUMAN SERVICES, Defendant-Appellee.
 No. 89-3640.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1990.
 
 On Appeal From the United States District Court for the Southern District of Ohio.
 S.D.Ohio
 REVERSED AND REMANDED.
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges; and DEMASCIO, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Margaret Mitchell appeals the Secretary of Health and Human Services' ("Secretary") denial of her applications for disability insurance benefits and Supplemental Security Income (SSI) benefits. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 Mitchell filed applications for disability insurance benefits and Supplemental Security Income (SSI) benefits on November 6, 1985, claiming the onset of disability as of November 6, 1985. Born on December 9, 1942, Mitchell was forty-four years old at the time of the final administrative decision. Mitchell alleges disability based on left shoulder impingement, lower back and cervical strain, leg pain and depression. The applicant has completed high school, and her past relevant work experiences are as a bank teller, clerk, cashier, and factory worker.
 
 
 3
 Mitchell was examined by John W. Wolf, Jr., M.D., in November 1984 for neck and shoulder pains resulting from an automobile accident. Dr. Wolf diagnosed "flexion extension injury to the cervical spine with residual musculoskeletal pain." He noted, however, that Mitchell's deep tendon reflexes were bilaterally symmetrical; that there were no sensory disturbances in the upper extremities; and that there was no tenderness in the posterior paracervical muscle masses and only mild tenderness in the scapulae and rhomboids. Dr. Wolf further stated that there was no muscle atrophy, and there was normal grip, biceps, triceps and deltoid strength. J.App. at 176.
 
 
 4
 Mitchell was examined by Clyde Henderson, M.D., in February 1985 for continuing pains in her back, neck and left shoulder. Dr. Henderson recommended evaluation and treatment by the pain clinic and surgery on the shoulder. During the same month, Mitchell underwent surgery for what was diagnosed as "impingement syndrome" in the left shoulder. Dr. Wolf indicated that Mitchell's postoperative condition was "entirely benign." Following the operation, Mitchell began a physical therapy program, which she discontinued four weeks earlier than scheduled because she felt her improvement made further therapy unnecessary. Id. at 170. However, there was a recurrence of the impingement syndrome symptoms.
 
 
 5
 Michael Welch, M.D., examined Mitchell in November 1985 for back and shoulder pains. Dr. Welch found no acute fractures, dislocations or evidence of segmental instability. Id. at 156. Physical examinations by John Levitas, M.D., and Ron M. Koppenhoefer, M.D., in January and April of 1986, respectively, revealed cervical strain and decreased range of motion in the cervical and lumbosacral spines.
 
 
 6
 In June of 1986, on referral by Dr. Henderson, Mitchell was evaluated by the pain clinic. The team evaluators concluded that Mitchell's "pain problem is being manifested in excessive disability, in large part due to her somatic over-amplification and her excessive level of depression." Id. at 250.
 
 
 7
 In post-hearing interrogatories in January 1987, vocational expert George Parsons, Ph.D., responded to the following question propounded by the ALJ: "Assuming the claimant's age, education, work experience, and medical evidence of residual functional capacities, what, if any, types of work exist in the national economy which the claimant could perform on a full-time basis?" Id. at 319. Parsons responded with a list of nine different positions which he felt Mitchell could perform and indicated that there were 22,556 such positions in Southwestern Ohio. Id. Parsons later amended his response to state that the 22,556 figure represented the number of suitable jobs available to the entire state of Ohio. Id. at 348. Dr. Parsons' conclusions were at variance with those of vocational consultant Roger Livingston, Ph.D., who reviewed Dr. Parson's responses and observed that Dr. Parson's use of "broad, sweeping occupational titles" led to an inflated figure for the number of jobs Mitchell could perform. Dr. Livingston concluded that Mitchell is "totally occupationally disabled."
 
 
 8
 On the basis of the medical evidence and Dr. Parsons' expert opinion, the ALJ concluded in a July 3, 1987 decision that "the claimant's problems with pain and left shoulder impingement and resulting surgery probably limit her capacity for work somewhat; however, she should still be capable of performing the sedentary type jobs named by the vocational expert." Id. at 31. Mitchell subsequently filed a complaint in the United States District Court of Ohio for judicial review of the ALJ's decision pursuant to 42 U.S.C. Sec. 405(g) (1982). The matter was referred to a magistrate for report and recommendation. On January 13, 1989, the magistrate recommended affirmance of the Secretary's denial of benefits. The magistrate's report and recommendation were subsequently adopted by the district court.
 
 II.
 
 9
 In reviewing the Secretary's decision, we seek to determine whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 10
 Mitchell first contends that the ALJ's hypothetical to Dr. Parsons was improper because it did not instruct Dr. Parsons to consider the effect of Mitchell's pain and did not include a specific residual functional capacity. Mitchell argues that these omissions rendered the Secretary's decision unsupported by substantial evidence. The ALJ in the instant case employed the five-step sequence prescribed by 20 C.F.R. Secs. 404.1520, 404.1520a, 416.920, and 416.920, and 416.920a (1989) in determining whether Mitchell was disabled. Having found that Mitchell's impairments failed to meet or exceed a condition set forth in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (1989), and having concluded that Mitchell could not perform her past relevant work, the ALJ's denial of benefits was based on step five of the sequential evaluation. That step seeks to determine whether, despite a claimant's severe impairments, and given a claimant's age, education, and past work experience, she is able to perform other work that exists in significant numbers in the national economy. 20 C.F.R. Sec. 416.920(f). To this end, the ALJ in the instant case propounded to Dr. Parsons a hypothetical question which sought to ascertain an answer to step five.
 
 
 11
 An ALJ's hypothetical question "should be an accurate summation of the evidence already presented in the record and can neither add to nor detract from that evidence." Myers v. Weinberger, 514 F.2d 293, 294 (6th Cir.1975) (per curiam). Where a hypothetical questions omits consideration of a claimant's pain and its disabling consequences, it is of "little if any evidentiary value" in determining the presence or absence of a disability. Noe v. Weinberger, 512 F.2d 588, 596 (6th Cir.1975). The Secretary argues that the ALJ properly discounted Mitchell's allegations of pain, as it may do where the objective medical evidence is inconsistent with the severity of pain alleged by a claimant. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986). This contention misses the point, however, because Mitchell's assignment of error is that Dr. Parsons, the vocational expert on which the ALJ placed heavy reliance, was given no instruction whatsoever to consider functional limitations caused by Mitchell's pain. Hence, it is immaterial that the ALJ discounted Mitchell's complaints of pain if the extent of that discount was not made clear to Dr. Parsons in the hypothetical propounded to him.
 
 
 12
 The centrality of Dr. Parsons' expert opinion to the Secretary's denial of benefits is apparent. The ALJ stated: "[A] decision on whether the claimant is disabled cannot be made based on work activity or on medical facts alone. [T]he record establishes that the claimant cannot perform her past relevant work. However, considering the claimant's residual functional capacity and her age, education, and past work experience, the Administrative Law Judge further concludes that there are other jobs which the claimant can perform and that such jobs exist in significant numbers in the national economy." J.App. at 25-26. The ALJ's conclusion that there exists significant numbers of jobs which Mitchell could perform was based on Dr. Parsons' expert opinion to the same effect. However, although Dr. Parsons reviewed Mitchell's medical file, there is no indication of the extent, if any, to which he specifically considered Mitchell's complaints of pain in arriving at his opinion. Id. at 318-19. As such, we do not believe that the ALJ's hypothetical was "an accurate summation" of the medical evidence. Indeed, vocational consultant Roger Livingston noted in his evaluation of Dr. Parsons' responses that some of the listed occupations required exertional demands beyond the sedentary level. Id. 324-25. Dr. Parsons' inclusion of such occupations as possible jobs for Mitchell implies that he was inadequately instructed as to what extent to consider Mitchell's complaints of pain. We conclude that the Secretary's finding that there exists a significant number of jobs which Mitchell is capable of performing is not supported by substantial evidence because the assumptions regarding the effect of Mitchell's complaints of pain are unclear from the record. Accordingly, we remand this case for additional expert vocational testimony using hypotheticals which fairly take into account Mitchell's complaints of pain.
 
 
 13
 Mitchell also seeks a reversal on the ground that the ALJ's hypothetical to Dr. Parsons failed to specify a residual functional capacity. At the administrative hearing stage, it is the ALJ's responsibility to determine a claimant's residual functional capacity. 20 C.F.R. Sec. 404.1546. Residual functional capacity is a medical assessment used to determine the particular work a claimant is capable of doing despite her impairments. Id. at Sec. 404.1545. The Secretary argues that it was implicit in the ALJ's hypothetical to Dr. Parsons that Mitchell possessed the residual functional capacity for sedentary work. According to the Secretary, this is evidenced by Dr. Parson's listing of a number of sedentary positions. As the Secretary concedes, however, some of the positions listed by Dr. Parsons were not sedentary. See Secretary's Brief for Defendant-Appellee at 27. Indeed, Dr. Livingston noted that some of the listed positions fell into the category of heavy work. J.App. at 325. Thus, it is evident that Dr. Parsons needed a more specific residual functional capacity than was provided by the ALJ. Accordingly, we remand this case for submission of additional vocational evidence using a more detailed residual functional capacity.
 
 III.
 
 14
 Mitchell next argues that the ALJ's finding that 22,256 jobs existed which were suitable for her did not constitute a significant number of jobs in the national economy because the number of suitable jobs was less than one-half of one percent of a possible 4,868,000 jobs available in the region. This court rejected a similar percentage-based argument in Hall v. Bowen, 837 F.2d 272, 274 (6th Cir.1988). In Hall, we held that 1350 to 1800 suitable jobs was a significant number within the meaning of 42 U.S.C. Sec. 423(d)(2)(A) and 20 C.F.R. Sec. 404.1566(b) despite the fact that it constituted only .25 to .33 percent of the total jobs available within the claimant's region. Based on the legislative history of the Social Security Amendments of 1967, which included a definition of "significant numbers," this court concluded that "when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." Id. at 275. The court went on to list criteria that an ALJ could consider in determining whether work exists in significant numbers, including the level of a claimant's disability; the reliability of the vocational expert's testimony; and the reliability of the claimant's testimony. Id. Mitchell argues that the ALJ's failure to explicitly consider the factors delineated in Hall necessitates a remand. This argument is meritless, however, because the Hall court intended its stated factors as suggestions only: "The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." Id.
 
 IV.
 
 15
 For the above reasons, we REVERSE and REMAND this matter for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Robert E. DeMascio, United States District Court for the Eastern District of Michigan, sitting by designation